## Woodward Township Taxpayers' Protest

*Henry M. Hipple, M. E. Haggerty* and *Allan W. Lugg,* for protestants.

*Morris Klewans,* for respondents.

LIPEZ, P. J., May 15, 1957.—This matter is before us on the petition of the Woodward Township Super-

visors and the Woodward Township Authority for a declaratory judgment asking us to declare a certain written protest against the construction of a sewer system to be legally insufficient for the reasons that: First, the protest lacks the requisite number of signatories required by law; and, second, that the form and language of the protest was inadequate for the purpose.[1]

It is alleged, and admitted, that the Supervisors of Woodward Township by a resolution adopted May 17, 1956, organized an authority to construct and operate a sewer system in Woodward Township for which articles of incorporation were issued on June 6, 1956, and members of the board for the authority were then appointed. The supervisors, by proper resolutions established a sewer district known as Sewer District No. 1 of Woodward Township defining precisely a portion of that township in which the proposed sewer system was to be constructed and authorizing the authority to construct it. Plans and specifications for the system were prepared by a qualified engineer hired for that purpose, and thereafter the authority advertised for bids for the construction of the system, and requests were made of a bonding house for bids upon bonds proposed to be issued to finance the project. Bids have been received, both for the constructions and the bonds, and are now awaiting disposition of these proceedings.

On April 17, 1957, which was within the time provided by law, protest petitions containing numerous signatories were filed with the prothonotary of this court, containing the following language:

---

[1] The petition was originally for a rule to show cause why the protest should not be stricken from the record. At the hearing held May 4, 1957, the parties stipulated that it be amended to be a petition for a declaratory judgment.

"Petition in Protest

"We, the undersigned, property owners of Woodward Township, Clinton County, Pennsylvania, submit this 'Petition In Protest' to the Woodward Township Sewer Authority opposing the installation of a sewer system at its advertised cost and its location as to the prints submitted by the engineer."

The Second Class Township Code of May 1, 1933, P. L. 103, as amended, 53 PS §66502, provides in material part as follows:

"If, before the expiration of twenty days after the last publication, tax payers of the township, or of the affected sewer district, if such district has been constituted, as hereinafter provided, whose property valuation, as assessed for taxable purposes within the township, or district shall amount to fifty per centum of the total property valuation, for such purposes of the township or sewer district, as the case may be, shall sign and file, in the office of the prothonotary of the court of common pleas of the county in which the township is located, a written protest against the construction of such sewer, drain or system thereof, then the construction authorized by such resolution or ordinance shall not be undertaken or proceeded with."

In order to facilitate the disposition of the factual question as to whether protestants represented 50 percent of the assessed valuation of the property owners within the district, the parties to this proceeding stipulated that a committee be appointed by the court to determine that question. A committee was so appointed and their report was made in open court. It showed that protestants did in fact represent more than 50 percent of the assessed property valuations of the affected district.

There remains, therefore, the question of form and language used in the protest. Petitioners contend that it was inadequate as a protest for a number of reasons:

First, that as to its formal aspects it was deficient in that it: (a) Failed to allege that the signatories are property owners of Woodward Township Sewer District No. 1; (b) failed to set forth that protestants constituted 50 percent of the total assessed property valuation; and (c) failed to contain a verification as required by rule 206 of the Pennsylvania Rules of Civil Procedure.

Second, that the language used in the protest is not actually an objection to the sewer system, but only to its proposed location and cost.

### 1. *The Formal Aspects of the Protest*

The act of assembly does not prescribe the form such protest shall take. It merely provides for the signing and filing in the prothonotary's office by the requisite property owners of the affected district within the prescribed time, of "a written protest against the construction of such sewer." A protest is just another name for an objection, or in more formal language, it is "a solemn declaration against an act about to be done or already done expressive of disapprobation or dissent." [2] Therefore, any writing signed and filed in proper time by the requisite property owners reasonably calculated to inform the proper authorities of the objection to the sewer project would suffice.

The protest alleges that protestants are property owners of Woodward Township. The sewer district is a part of Woodward Township. Such an allegation was sufficient to put the authority on notice that all or a sufficient number of protestants might be property owners of the affected sewer district. Whether they were so in fact could only be determined by an investigation, which common prudence would dictate, and we think it was the duty of the authority to undertake.

[2] 50 C. J. 825.

This investigation would have disclosed, as the committee report shows, that the signers were all property owners of the sewer district.

In the circulating and signing of such a protest, protestants ordinarily would not know in advance whether the requisite property owners would sign; nor until the point of 50 percent is reached, could any signer properly allege as a matter of fact that the signers constitute such 50 percent. Whether or not they did so constitute was a conclusion to be arrived at by the authority after investigation.

Petitioners' contention that the protest is defective because it does not contain a verification as required by rule 206 of the Pennsylvania Rules of Civil Procedure, is based on the assumption that the protest is a petition. We believe this to be an untenable assumption.

Section 1 of the Procedural Rules Enabling Act of June 21, 1937, P. L. 1982, as amended, March 30, 1939, P. L. 14, 17 PS §61, provides in part as follows:

"From and after the effective date of this act, the Supreme Court of Pennsylvania shall have the power to prescribe by general rule the forms of actions, process, writs, pleadings, and motions, and the practice and procedure in civil actions at law and in equity for the courts of common pleas of every county, for the county court of Allegheny County, for the municipal court of Philadelphia, and for such other courts having jurisdiction in civil actions as the General Assembly shall hereafter establish . . ."

It is apparent that this act, upon the authority of which the Rules of Civil Procedure are prescribed by the Supreme Court, relates only to civil actions in the specified *courts* and *to the courts alone*. Such rules therefore cannot, and do not, purport to set up rules relating to any other body.

The act authorizing the protest in this case does not specify to whom the protest shall be addressed. Presumably, therefore, it should properly be addressed to the body which would undertake the project, in this case the authority, which had been authorized to do so by the supervisors' resolution. In any event, under the provisions of the act the filing of the protest in itself acts as a bar to the construction, without requesting the aid of a court. It is clear, therefore, that the protest does not have the status of a petition under the Pennsylvania Rules of Civil Procedure, and hence rule 206 is not applicable.[3]

We conclude, therefore, that the protest was not defective in form.

## 2. *The Language of the Protest*

Petitioners contend that the language of the protest which states "opposing the installation of a sewer system at its advertised cost and its location as to the prints submitted by the engineer," is an objection only to the proposed location and the cost of installing the sewer system, that the act of assembly permits the property owners only to state whether there shall be sewers or no sewers, that the details of construction are to be left to the elected supervisors who can obtain the necessary professional advice and therefore, since the objections went beyond the scope of the provisions of the act, it is defective.

What protestants did was to incorporate in their protests the reasons that motivated them to object to the project. They, of course, were not required to do so by the act. All they were required to do was protest. The fact that they set forth the reasons which impelled

---

[3] Protestants at time of hearing filed a motion with us to amend the protest by adding thereto verifications, to which petitioners objected. Under the view we take of the case the amendment is unnecessary.

them to object, whether good or bad, informed or uninformed, wise or foolish, is beside the point and does not make it any whit the less a protest. Certainly if the protest had concluded with the words "opposing the installation of a sewer system," there would be no question that the protest was sufficient. They, however, went further and gave two reasons for their opposition, namely, its cost and location.

There are any number of possible reasons why they might oppose it. Certainly one of the most obvious would be its cost. Dissatisfaction with the proposed location might be another. Now it is conceivable that their objection to the proposed location might be construed as an objection to the location only, and not necessarily to the desirability of a sewer system. But certainly the cost is a basic reason at any time for objections to any system or any project.

No doubt most property owners in a rural district, without a sewer system, would desire to have the advantage of a modern system. However, the desirability and the advantage of every such improvement must be weighed against its cost. Here the legislature gave the property owners a choice. They chose not to have it in reasonably clear language. We think the language was adequate for the purpose.

It is not the function or duty of the court to pass upon the necessity or desirability of the sewer system, nor upon the wisdom or judgment of any of the parties to this litigation. Ours is purely a legal problem relating solely to the factual and legal sufficiency of the protest. We are satisfied that it is in fact and law sufficient.

We, therefore, enter the following

*Order*

And now, May 15, 1957, the petition is dismissed and rule discharged.